UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES PLUNKETT,<br><br>        Plaintiff,<br><br>    v.<br><br>C. PARHAM, et al.,<br><br>        Defendants. | No.  2:19-cv-1450 KJM AC P<br><br>ORDER AND FINDINGS AND <u>RECOMMENDATIONS</u> |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF No. 57.

I.    <u>Procedural History</u>

This case proceeds on plaintiff's original complaint, which was screened and found to state claims for relief against defendants Parham, Davis, and Andrade.  ECF No. 10.  Following the close of discovery, defendants filed the instant motion for summary judgment.  ECF No. 57. Plaintiff opposed the motion (ECF No. 59) and defendants replied (ECF No. 60).

II.    <u>Plaintiff's Allegations</u>

Plaintiff, a transgender inmate, alleges that defendants violated her[1] Eighth Amendment

---

[1] Although plaintiff <u>used</u> he/him pronouns in the complaint, subsequent filings, including the
(continued)

1

right to be free from cruel and unusual punishment on two occasions. See ECF No. 1. The complaint alleges that on March 31, 2017, plaintiff was frisked by defendant Andrade when exiting the dining hall and ordered to pull up her bra, exposing plaintiff's private body parts to bystanders. Id. at 6-7. Plaintiff alleges that the nearby officers began to laugh and crack jokes. Id. at 6. Plaintiff also alleges that on September 24, 2018, defendant Parham forced plaintiff to submit to a strip search in front of other inmates and officers, without reasonable suspicion that plaintiff had a weapon or contraband. Id. at 4-5. Defendant Davis observed the search but did not comment or intervene. Id. at 5.

### III. Motion for Summary Judgment

#### A. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon

---

opposition to defendants' motion for summary judgment, use she/her pronouns. See ECF Nos. 28, 37, 59. The court will therefore use she/her pronouns when referring to plaintiff. If plaintiff wishes the court to use different pronouns, she may so inform the court.

2

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

3

1 opposing party's obligation to produce a factual predicate from which the inference may be

2 drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4 some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

5 omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

6 non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

7 U.S. at 289).

8      Defendants served plaintiff with notice of the requirements for opposing a motion

9 pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary

10 judgment.  ECF No. 57-5; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se

11 prisoners must be provided with notice of the requirements for summary judgment); Rand v.

12 Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

13      B.     Defendants' Arguments

14      Defendants contend that they are entitled to summary judgment because during the March

15 31, 2017 incident, Andrade conducted a "random clothed body search[]" of plaintiff in

16 accordance with California Department of Corrections and Rehabilitation ("CDCR") policy and

17 as part of an institutional strategy to reduce inmate access to weapons and contraband.  ECF No.

18 57-1 at 8, 12.  Defendants also argue that Parham conducted a "routine unclothed body search" on

19 September 24, 2018, which was also in accordance with CDCR policy.  Id. at 9, 12-13.  Finally,

20 all defendants argue that they are entitled to qualified immunity.  Id. at 14.

21      C.     Plaintiff's Response

22      At the outset, the court notes that plaintiff has only partially complied with Federal Rule

23 of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

24 disputed must support the assertion by . . . citing to particular parts of materials in the record."

25 Plaintiff also did not comply with Local Rule 260(b) requiring the party opposing a motion for

26 summary judgment to "reproduce the itemized facts in the Statement of Undisputed Facts and

27 admit those facts that are undisputed and deny those that are disputed."  See Fed. R. Civ. P. 56(e).

28 ////

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered. Additionally, all unopposed assertions in defendants' statement of undisputed facts will be taken as undisputed. See Fed. R. Civ. P. 56(e)(2).

Plaintiff opposes defendants' motion on the grounds that defendants' searches, which required plaintiff to expose her breasts and other body parts to male staff and inmates, were violations of CDCR policy relating to searches of transgender inmates. ECF No. 59 at 2, 6.

D. Plaintiff's Request for In Camera Review

In plaintiff's opposition, she requests that the court conduct an in camera review of discovery materials. ECF No. 59 at 6, 10. However, the court will not comb through an unspecified number of unidentified documents looking for anything that could benefit plaintiff's claims, and the request for in camera review will be denied.

To the extent plaintiff is trying to challenge the sufficiency of defendants' discovery responses or claim that she is lacking necessary evidence to defend against the motion for summary judgment, Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows

5

by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." However, "[a] movant cannot complain if it fails diligently to pursue discovery before summary judgment." Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) (citations omitted).

In this case, the time for filing motions to compel has long since passed and plaintiff fails to provide any reason as to why she was unable to file a motion to compel or otherwise obtain the discovery she now seeks within the time previously provided. Accordingly, plaintiff has not demonstrated that she was diligent in pursuing the discovery she now seeks to compel or otherwise pursue. The request will therefore be denied.

E.   Material Facts

At all times relevant to the complaint, plaintiff was housed at Mule Creek State Prison. ECF No. 1 at 1-2; ECF No. 57-6 at 2, ¶ 1. Plaintiff is a transgender individual whose assigned sex at birth was male and who identifies as female. ECF No. 57-6 at 2, ¶ 2; ECF No. 57-4 at 56 (PL's Depo. 53:10-19).

i.   Search Policies

Weapons and other related contraband pose the greatest threat to inmate and officer safety at Mule Creek, and one of the prison's primary objectives is to limit the distribution of weapons and contraband. ECF No. 57-6 at 2, ¶ 3. One of the principal methods officers use to limit the distribution of weapons and related contraband is to conduct regular searches. Id., ¶ 4. Clothed body searches are conducted over an inmate's clothes and are conducted randomly. Id. at 3, ¶ 5. Unclothed body searches are more thorough, and inmates assigned to designated areas, such as vocational programs, industries, plant operations, or outside crews, are routinely subjected to these searches. Id., ¶ 6. All inmates are subject to both types of search. Id., ¶ 7.

ii.   March 31, 2017 Clothed Search

On March 31, 2017, Andrade was working on Facility A at Mule Creek. Id., ¶ 8. On that day, Andrade and several of his fellow officers were directed to conduct random clothed body searches of inmates on Facility A after their evening meal. Id. at 3-4, ¶ 9. Typically, when

officers would conduct random searches at that location, one officer "posts up" at the doorway to the dining hall and then selects inmates at random to be searched. Id. at 4, ¶ 10. The other officers then line up along a wall, and the chosen inmate would be searched by the next available officer. Id. As plaintiff was leaving the dining hall, the officer standing near the doorway chose her randomly to be searched and Andrade was the next available officer to conduct the search. Id., ¶ 11. According to CDCR policy at the time, transgender inmates who were born male were to be searched by male officers. Id. at 5, ¶ 13. CDCR officers performing clothed body searches must conduct a complete search of the inmate, from the top of their head to the bottom of their feet, including closely checking all pockets, seams, and personal effects. Id. at 4, ¶ 12.

Plaintiff was directed to face the wall, and Andrade used his hands to perform a quick pat down search of plaintiff's entire body, from the top of her head to the bottom of her feet. Id. at 5, ¶ 15. The entire search did not last longer than a minute and Andrade never touched plaintiff's breasts or undergarments. Id., ¶¶ 17-18.

Plaintiff disputes whether Andrade followed CDCR policy while conducting the search. See ECF No. 59 at 5. The parties also dispute whether Andrade required plaintiff to expose her breasts during the "routine clothed body search." ECF No. 57-2 at 3; ECF No. 59 at 5. Andrade asserts that he

> used the back of [his] hand to quickly swipe below [plaintiff's] breast area to ensure [s]he had no weapons or contraband there, without ever touching [her] breasts. . . . [Andrade] told [plaintiff] to use [her] own hands to reach underneath [her] brassiere, and to then shake it to confirm there was no hidden contraband. . . . [He] specifically told [plaintiff] to be careful about exposing [her]self, and [he] told [her she] should not lift [her] bra up while [s]he was shaking it.

ECF No. 57-2 at 3, ¶ 6. Plaintiff asserts that Andrade required her to turn away from the wall and lift up her shirt and bra, exposing her breasts in front of other inmates and officers. ECF No. 1 at 6; ECF No. 57-4 at 46-47 (PL's Depo. 43:4-44:21); ECF No. 59 at 5.

### iii. September 24, 2018 Unclothed Search

On September 24, 2018, plaintiff was working in the sewing shop at Mule Creek. ECF No. 57-6 at 6, ¶ 19. Inmates working in the sewing shop had access to needles and other

contraband that necessitate searches to ensure the safety of staff and inmates. Id., ¶ 20. All inmates, including transgender inmates, are subject to unclothed body searches as they leave their work assignments to ensure there is no contraband. Id., ¶ 21. At the end of each shift, the sewing shop manager releases the inmates so that they can be searched. Id., ¶ 23. Approximately four officers then wait outside the door at designated tables to conduct the searches. Id. at 7, ¶ 24. Inmates leaving the sewing shop line up inside the shop near the door, waiting to be released to be searched by the next available officer. Id., ¶ 25.

On September 24, the manager of the sewing shop let the transgender inmates go first to be searched, but the other inmates pushed ahead of them so the transgender inmates were not searched first. Id., ¶ 26. When it was plaintiff's turn to be searched, Parham called plaintiff over to be searched and plaintiff informed Parham that she was transgender and was to be treated differently. Id., ¶¶ 27-28. At the time, CDCR policy provided that transgender inmates born male were to be searched by male officers, and Parham informed plaintiff that in the absence of a formal memo from his superiors, plaintiff had to be searched the same way as everyone else. Id. at 7-8, ¶¶ 29-30. Davis informed plaintiff that if plaintiff objected to the search, she could submit an appeal. Id. at 8, ¶ 31. The search lasted about a minute. Id., ¶ 32. Plaintiff disputes whether defendants violated CDCR policy while conducting the search and appears to assert that policy required the search to be treated as a cross-gender search. See ECF No. 1 at 5; ECF No. 59 at 7-9.

F. Discussion

i. Eighth Amendment

a. Legal Standards

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones . . . ." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation

alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. at 834 (citations omitted).  Second, "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'  To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" "one of 'deliberate indifference' to inmate health or safety." Id. (citations omitted).

This Eight Amendment legal standard applies to sexual abuse and harassment claims. Wood v. Beauclair, 692 F.3d 1041, 1045-47 (9th Cir. 2012) (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Id. at 1046; see also Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000).  Allegations of merely verbal or visual harassment do not state an Eighth Amendment claim. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (vulgar comments do not violate Eighth Amendment); Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (prison guard's brief exposure of own genitals to inmate does not violate Eighth Amendment).

The Ninth Circuit has held that a prisoner states a viable Eighth Amendment claim where he or she "proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020).  "[W]here the allegation is that a guard's conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." Id. at 1145.  "Such a showing will satisfy the objective and subjective components of an Eighth Amendment claim." Id.

However, an isolated incident of sexual abuse or harassment does not rise to the level of a constitutional violation unless it is severe. See Watison v. Carter, 668 F.3d 1108, 1112-13 (9th Cir. 2012) (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed his thigh against [the inmate's] thigh, 'began smiling in a

sexual [context],' and left the cell laughing."); Somers v. Thurman, 109 F.3d 614, 616, 623-24 (9th Cir. 1997) (no Eighth Amendment violation where female officers conducted visual body cavity searches of male inmates and watched the inmates shower, all while pointing at the inmates, gawking, and joking among themselves).

Additionally, in certain circumstances, pat-down searches by members of the opposite sex have been found to violate the Constitution. Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir. 1993) (finding the searches inflicted pain that was unnecessary and wanton and emphasizing the intrusiveness of the search policy and the prison's awareness of many female inmates' history of abuse). However, without evidence of particular vulnerabilities that would contribute to psychological trauma, the Ninth Circuit has held pat-down searches constitutional. Id. at 1526; see Grummett v. Rushen, 779 F.2d 491, 493 n.1 (9th Cir. 1985). Absent particularized circumstances, "[c]ross-gender searches 'cannot be called inhumane and therefore do[] not fall below the floor set by the objective component of the [E]ighth [A]mendment.'" Somers, 109 F.3d at 623 (alterations in original) (citation omitted).

b. Discussion

1. March 31, 2017 Clothed Search

Defendant Andrade argues that he is entitled to summary judgment because he followed CDCR protocol for conducting a clothed body search of a transgender person. ECF No. 57-1 at 11-12. He declares that he did not ask plaintiff to expose her breasts during the search. ECF No. 52-2 at 3, ¶ 6.[2] However, plaintiff disputes this and avers in her complaint and testified at deposition that Andrade asked plaintiff to shake out her bra, which exposed her breasts to male inmates and officers. ECF No. 57-4 at 46-47. Plaintiff also avers that Andrade and other officers began to laugh and cracked jokes while plaintiff's breasts were exposed, making plaintiff feel humiliated. ECF No. 1 at 6. Even taking plaintiff's allegations as true, however, plaintiff has not provided sufficient evidence to support a finding that Andrade violated the Eighth Amendment.

---

[2] "I told [plaintiff] to use [her] own hands to reach underneath [her] brassiere, and to then shake it to confirm there was no hidden contraband. I specifically told [her] to be careful about exposing [herself], and I told [her] [she] should not lift [her] bra up while [she] was shaking it." Id.

10

Regarding plaintiff's sexual harassment theory, while it is a violation of the Eighth Amendment for a prison official to engage in sexual conduct for the purpose of humiliating the prisoner, Bearchild, 947 F.3d at 1144, verbal abuse on its own does not rise to the level of an Eighth Amendment violation, Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004). Here, plaintiff has stated that Andrade "began to laugh, and crack jokes," but she has not alleged or proffered any evidence that Andrade touched her in a sexual manner.[3] Moreover, the undisputed facts demonstrate that Andrade's objectionable conduct occurred after the pat down portion of the search had concluded. Taking the evidence in the light most favorable to plaintiff, Andrade's alleged harassment does not rise to the level of an Eighth Amendment violation. See Somers, 109 F.3d at 624 ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd.").

Further, defendant has presented sufficient evidence to establish that the random clothed body search was conducted for the legitimate penological purpose of prison safety. ECF No. 57-2 at 2. Because it is obvious that contraband can be hidden in a brassiere, requiring an inmate to move their brassiere away from their body as part of a random clothed search is not per se unreasonable. Moreover, the evidence does not support a conclusion that Andrade's actions—whether he required plaintiff to merely "shake out" her bra as he declares or told her to briefly lift it as she avers—exceeded the scope of what was required to satisfy that institutional concern. See Bearchild, 947 F.3d at 1145. Even if plaintiff's allegations are true, the consequent exposure was fleeting and the entire search lasted less than a minute. An isolated incident requiring plaintiff to briefly expose her breasts to male officers and other inmates does not rise to the level of a constitutional violation under Ninth Circuit precedent, even if plaintiff understandably experienced it as a humiliating. See Watison, 668 F.3d at 1112; Somers, 109 F.3d at 616, 623-24.

---

[3] Andrade admits that the clothed body search involves "us[ing] the back of [his] hand to quickly swipe below [plaintiff's] breast area" (ECF No. 57-2 at 3), however, plaintiff does not allege that Andrade touched her in a sexual manner.

11

Plaintiff has not identified any evidence that the search was conducted for Andrade's sexual gratification or other improper purpose. She has not identified any evidence that she had a history of abuse that would be exacerbated by the search. While plaintiff alleges that she suffers from "overwhelming anxiety" (ECF No. 1 at 6), she has not provided evidence to show that Andrade was aware of this or that her anxiety would be foreseeably aggravated by the search. Plaintiff's complaint and opposition to the motion for summary judgment claim that defendants did not follow CDCR policy, but even if true, a violation of prison policy does not equate to a violation of the Eighth Amendment. See Cousins v. Lockyer, 568 F.3d 1063, 1071 (9th Cir. 2009) ("state departmental regulations do not establish a federal *constitutional* violation"); Lewis v. Corcoran State Prison Food Servs. Dept., No. 11-cv-00369 AWI GBC P, 2011 WL 3438419, at *3, 2011 U.S. Dist. LEXIS 86153, at *8-9 (E.D. Cal. Aug. 3, 2011).

In sum, a brief search conducted for a legitimate penological purpose and without explicitly sexual contact or other attendant misconduct does not rise to the level of a constitutional violation. See Sweet v. Ruiz, No. ED CV 19-663 JVS MRW, 2020 WL 4919683, at *5, 2020 U.S. Dist. Lexis 153340, at *11-14 (C.D. Cal. July 20, 2020) (summary judgment appropriate where pat-down search of transgender inmate allegedly included groping of inmate's brassiere and buttocks, but search was undisputedly brief and plaintiff presented no evidence that officer acted for his own sexual gratification or committed other misconduct). Accordingly, the motion for summary judgment should be granted as to defendant Andrade.

### 2. September 24, 2018 Unclothed Search

Defendants Parham and Davis argue that they are entitled to summary judgment because they followed CDCR policy when performing an unclothed body search of plaintiff. ECF No. 57-1 at 12-13. Plaintiff argues that she was supposed to be searched differently than other inmates because she is transgender. ECF No. 59 at 7-8. She contends that she was improperly subjected to a strip search in front of male inmates and officers, and that defendants made harassing comments. ECF No. 59 at 8; ECF No. 1 at 4, 6.

Here, based on the facts alleged, defendants' search of plaintiff served the legitimate penological purpose of making sure contraband or weapons did not leave the sewing room and

enter the prison. Even though plaintiff alleged in her complaint that there was no valid reason for the search, she later testified during her deposition that she had access to contraband in the sewing shop, that sewing shop workers were routinely strip searched at the end of their shift, and that it was her understanding the purpose of the search was to make sure the prisoners did not leave the sewing shop with contraband. ECF No. 57-4 at 63-65 (60:22-61:7, 62:9-24). Further, even though Parham and other officers "made verbal comments about plaintiff's body parts," verbal abuse is not enough to show a constitutional violation. See Somers, 109 F.3d at 624; see also Burton v. City of Spokane, No. 06-cv-0322 RHW, 2009 WL 772929, at *4-5, 2009 U.S. Dist. LEXIS 23185, at *12, 15 (E.D. Wash. Mar. 18, 2009) (officers executing search warrant entitled to qualified immunity because alleged comments that "[t]here is no crack in this crack" and "I wonder if he has ever been molested" made during strip search of arrestee did not rise to the level of a constitutional violation and render search unreasonable), aff'd sub nom. Burton v. Spokane Police Dep't, 383 F. App'x 671, 673 (9th Cir. 2010). While the courts have "consistently recognized the frightening and humiliating invasion occasioned by a strip search, even when conducted with all due courtesy," Byrd v. Maricopa County Sheriff's Dep't, 629 F.3d 1135, 1143 (9th Cir. 2011) (citations and internal quotation marks omitted), courts have also found routine visual strip searches constitutional where they serve a legitimate penological purpose, see Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). Plaintiff does not allege that Parham or Davis touched her during the search, and visual body cavity searches conducted as a means of preventing prisoners from possessing weapons and contraband have been found to be constitutional. Id. at 332; see Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (finding strip search constitutional where it was visual and did not involve touching). Furthermore, there is no requirement that strip searches be conducted in a private location. See Thompson, 111 F.3d at 701.[4]

---

[4] To the extent plaintiff argues that an unclothed search of a transgender female should not have been conducted by male officers at all, defendants have established beyond dispute that they followed the CDCR policy in effect at the time. This issue is discussed more fully below, regarding qualified immunity.

13

As for defendant Davis, supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citations omitted). Here, plaintiff alleges that defendant Davis observed the September 24, 2018 search and when plaintiff objected to the search, Davis told her to appeal it. ECF No. 57-6 at 8, ¶ 31. While it appears that Davis "knew of" the search and could have stopped it, the search did not exceed constitutional limits and so was not a "violation" that he had a constitutional duty to stop. Accordingly, Davis is not liable as a supervisor.

For these reasons, defendants' motion for summary judgment as to the September 24, 2018 search should be granted.

        G.      Qualified Immunity

            i.  Legal Standard

Qualified immunity is a defense that must be pled by a defendant official. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). It is an "entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009)). Even if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances. See Friedman v. Boucher, 580 F.3d 847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987). When government officials are sued in their individual capacities for civil damages, a court must "begin by taking note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert the defense of qualified immunity." Iqbal, 556 U.S. at 675.

The doctrine of qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow, 457 U.S. at 818). The qualified immunity analysis involves

1  two parts, determining whether (1) whether the facts that a plaintiff has alleged or shown make
2  out a violation of a constitutional right; and (2) whether the right at issue was clearly established
3  at the time of the defendant's alleged misconduct. Saucier, 533 U.S. at 201; see Pearson, 555
4  U.S. at 232, 236; see also Bull v. City and County of San Francisco, 595 F.3d 964, 971 (9th Cir.
5  2010). A right is clearly established only if "it would be clear to a reasonable officer that his
6  conduct was unlawful in the situation he confronted." Saucier, 533 at 202; Norwood v. Vance,
7  591 F.3d 1062, 1068 (9th Cir. 2010). These prongs need not be addressed in any particular order.
8  Pearson, 555 U.S. at 236.

    ii. Discussion

  Defendants argue that they are entitled to qualified immunity because "no reasonable male correctional officer could have known that either a clothed or unclothed body search of [plaintiff] could have violated [plaintiff's] rights." ECF No. 57-1 at 14. As discussed above, plaintiff has not established that her constitutional rights under the Eighth Amendment were violated. However, the undersigned now considers in the alternative whether—even if the searches at issue violated the Eighth Amendment in the opinion of this court—defendants' conduct violated clearly established law.

  To determine whether a right is clearly established involves considering whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson[v. Creighton, 483 U.S. 635 (1987)], the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"); Saucier, 533 U.S. at 202.

  "The 'clearly established law' test requires more than an alleged 'violation of extremely abstract rights.'" Tribble, 860 F.2d at 324 (quoting Anderson, 483 U.S. at 639). Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson, 483 U.S. at 640). "In other words, 'in the light of preexisting law the unlawfulness must be apparent.'" Id. (citation omitted). "Clearly established" means the statutory or constitutional question was "beyond debate" such that every reasonable official would understand that what he is doing is unlawful. See District of

15

Columbia v. Wesby, 583 U.S. 48, 63 (2018); Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). To be "clearly established," a rule must be dictated by controlling authority or a robust consensus of cases of persuasive authority. Wesby, 583 U.S. at 63; Vos, 892 F.3d at 1035; see also Perez v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (holding that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). Courts must define the law with a "high degree of specificity" when applying qualified immunity. Wesby, 583 U.S. at 63. The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035.

While "cross-gender strip searches in the absence of an emergency violate an inmate's right under the *Fourth* Amendment to be free from unreasonable searches," Byrd, 629 F.3d at 1146 (emphasis added), plaintiff has not presented, nor is this court aware of, any authority clearly establishing that such searches violate the *Eighth* Amendment. Even if the court assumes that a cross-gender strip search violates the Eighth Amendment as well as the Fourth, the court is unable to identify any authority clearly establishing the right of transgender inmates to be searched by an officer of the gender with which they identify. At the time of the searches at issue, the law was not clearly established regarding whether a male officer conducting a strip search of a transgender female constituted a cross-gender search within the meaning of Ninth Circuit precedent, or whether a male officer was required to treat a transgender female any differently than a cisgender male during a search. Accordingly, the violative nature of the searches at issue here was not "clearly established" in the specific context of this case: the pat-down or unclothed visual search of a transgender female inmate by male officers.

There have been some recent cases in this circuit that have considered searches of transgender plaintiffs to constitute cross-gender searches, however these cases were decided after the two incidents at issue in this case. See, e.g., Erbacher v. Robles, No. 1:23-cv-01194 JLT BAM P, 2023 WL 6201535, at *6, 2023 U.S. Dist. LEXIS 169430, at *15-16 (E.D. Cal. Sept. 22, 2023); Sweet, 2020 U.S. Dist. Lexis 153340, at *11-14. Moreover, in neither of the cited cases did the designation of the search as "cross-gender" result in a finding that it was per se unconstitutional. In Erbacher, the court treated the strip search of a transgender female by male

16

officers as a cross-gender search, but concluded that the inmate failed to state a claim for relief where there were no allegations that she had been touched, that the scope of the search exceeded the penological justification for the search, or that she was particularly vulnerable to a severe psychological injury from a search by a male officer. Erbacher, 2023 U.S. Dist. LEXIS 169430, at * 17. In Sweet, a pat-down case, the court also assumed without discussion that standards for cross-gender searches apply, but nonetheless recommended summary judgment for defendants because there was no evidence of touching, sexual motivation, or misconduct. Sweet, 2020 U.S. Dist. Lexis 153340, at *11-14. Neither case supports a finding that the searches at issue here were clearly unconstitutional.

Given the absence of precedent establishing the unlawfulness of the searches beyond debate, defendants are entitled to qualified immunity. This would be so even if this court were to conclude, in light of recent developments in the understanding of gender, that the Constitution requires that transgender female inmates be patted down or subject to unclothed visual searches only by female officers.[5] The question for purposes of qualified immunity is where a reasonable officer in each defendant's positions at the times of the searches in question would be expected to understand that "what he was doing was wrong." The answer is no. Defendants are therefore entitled to summary judgment on qualified immunity grounds.

IV.    Plain Language Summary of this Order for a Pro Se Litigant

The magistrate judge recommends that defendants' motion for summary judgment be granted and this case be closed, because the evidence shows that the searches on March 31, 2017 and September 24, 2018 did not rise to the level of sexual harassment or an unconstitutional search. Even if CDCR policy was violated, or if the searches did not respect your dignity, that does not amount to a constitutional violation. Also, the defendants are entitled to qualified immunity because it wasn't clear in 2018 that it violated the Constitution for male officers to search a transgender female inmate. Qualified immunity would apply even if your rights had been violated. The district judge will make the final decision whether to grant summary

---

[5] More recent CDCR policies permit transgender inmates to specify whether they wish searches to be conducted by male or female officers. See Erbacher, supra.

judgment to defendants, and you may submit written objections to this recommendation which that judge will consider.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's request for in camera review or further discovery (ECF No. 59 at 6, 10) is DENIED.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (ECF No. 57) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 17, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE